**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Ajay Kumar Sinha,** | ) | **CASE NO. 1:07 CV 2274** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Evelyn Upchurch, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

This matter is before the Court upon Defendants' Motion to Dismiss (Doc. 6). This case arises from plaintiff's application for naturalization. For the reasons that follow, the motion is GRANTED.

## FACTS

Plaintiff, Anjay Kumar Sinha, filed this action against defendants, Evelyn Upchurch, Director Texas Service Center, U.S. Citizenship and Immigration Services, Mark Hansen, District Director, Cleveland Office, United States Citizenship and Immigration Services, Emilio T. Gonzalez, Director, United States Citizenship and Immigration Services, Michael Chertoff,

1

Secretary, Department of Homeland Security (collectively, "CIS Defendants"); Alberto Gonzales, Attorney General of the United States, and Robert S. Mueller, III, Director, Federal Bureau of Investigation ("FBI Defendants"), seeking an order compelling defendants to act upon plaintiff's application for naturalization.

Plaintiff is a citizen of India.  On July 25, 2006, plaintiff filed an N-400 application for naturalization.  Plaintiff's wife also applied for naturalization on that date.  Her application was granted and she became a citizen in January of 2007.  Plaintiff's fingerprints were taken on August 17, 2006.  At some point, plaintiff inquired about the status of his naturalization application.  On June 15, 2007, CIS responded that his "case is awaiting FBI name check response."  Plaintiff has not yet been scheduled for an interview on his application.

Thereafter, plaintiff filed this lawsuit asserting one claim for relief.  Count one seeks an order compelling defendants to perform their duties and adjudicate plaintiff's N-400 application, including background checks, within 60 days.

**STANDARD OF REVIEW**

**Rule 12(b)(1)**

When a court's subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of proof.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton*, 798 F.2d 913, 915 (6th Cir. 1986).  This burden is not onerous.  *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).  The party need only show that the complaint alleges a substantial claim under federal law. *Id*.

A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack.

2

*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Facial attacks question the sufficiency of the jurisdictional allegations in the complaint. *Id.*  Thus, those allegations must be taken as true and construed in the light most favorable to the nonmoving party. *Id.*  Factual attacks, however, challenge the actual fact of the court's jurisdiction. *Id.*  In such cases, the truthfulness of the complaint is not presumed.  *McGee v. East Ohio Gas Co.*, 111 F.2d 979, 982 (S.D. Ohio 2000) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990)).  Instead, the Court may weigh any evidence properly before it.  *Morrison v. Circuit City Stores, Inc.*, 70 F.Supp.2d 815, 819 (S.D. Ohio 1999) (citing *Ohio Nat'l*, 922 F.2d 320; *Rogers*, 798 F.2d 913).

**Rule 12(b)(6)**

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999).  The complaint is not to be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). *See also Hammond v. Baldwin,* 866 F.2d 172, 175 (6th Cir. 1989).  Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.  However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman* (*In Re DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993).

**DISCUSSION**

1.    8 U.S.C. § 1447(b)

Defendants argue that this Court lacks subject matter jurisdiction over this matter under 8

U.S.C. § 1447(b), which provides,

> (b) Request for hearing before district court
>
> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

Courts have disagreed over whether the 120-day period begins after the initial interview is conducted, or whether it is triggered only after the entire investigatory process is complete.[1] The debate, however, is irrelevant for purposes of this dispute because plaintiff alleges that no interview has been scheduled. Moreover, plaintiff concedes that he is not seeking to invoke this Court's jurisdiction pursuant to this statutory provision. Accordingly, under any argument, the 120-day period has not been triggered and this Court lacks jurisdiction over this matter under 8 U.S.C. § 1447(b).

    2.    <u>Mandamus and Administrative Procedure Act ("APA") claims</u>

Defendants argue that plaintiff's claim under the mandamus statute must fail because plaintiff cannot establish that defendants have a clear and non-discretionary duty to adjudicate

---

[1] The Code of Federal Regulations specifically provides that an interview is to be scheduled only after the full background check is complete. In the wake of 9/11, the FBI is significantly backlogged with requests for background checks. As such, it appears that the CIS began conducting interviews before the background checks were completed. After many courts ruled that the 120-day period began to run from the interview date regardless of the fact that the background check was not completed, the CIS appears to have stopped performing the interviews absent completed background checks. At least one court of appeals indicated in dicta that jurisdiction would not lie if CIS followed its own regulations and simply did not schedule an "early" interview. *See, e.g., Walji v. Gonzales*, 500 F.3d 432, 439 (5th Cir. 2007).

plaintiff's N-400 application within a certain time period. Defendants also argue that mandamus is inappropriate because the Attorney General maintains discretion over the process of naturalization. In addition, defendants claim that permitting the processing of applications "out of order" unfairly favors other waiting applicants. Defendants also claim that plaintiff's claim under the APA fails because the delay in processing the claims is not unreasonable.

In response, plaintiff argues that mandamus relief is proper because plaintiff has alleged that CIS failed to perform its nondiscretionary duty to adjudicate his N-400 application. According to plaintiff, defendants are required to complete adjudication of pending applications within a reasonable time. For these same reasons, plaintiff claims that the APA confers jurisdiction over this matter.

With regard to mandamus jurisdiction, "[t]he existence of jurisdiction under section 1361 is inextricably bound with the merits of whether a writ of mandamus should issue; in order to establish either jurisdiction or entitlement to the writ, a court must find that a duty is owed to the plaintiff." *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987).

The APA requires, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA further states when judicial review may be had:

> Right of Review: A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

5 U.S.C. § 702. The APA also delineates which actions are reviewable:

> Actions Reviewable: Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a

5

> court are subject to judicial review. A preliminary, procedural, or
> intermediate agency action or ruling not directly reviewable is subject
> to review on the review of the final agency action.

5 U.S.C. § 704. Agency action "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). A failure to act as agency action is failure to take a discrete, required action. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62-63 (2004). Courts, however, may only compel action that is legally required. *Id*. at 63.

Although the parties do not distinguish among defendants, the Court finds that different analyses apply. Accordingly, the defendants will each be addressed in turn.

### CIS Defendants

Upon review, the Court finds that it lacks jurisdiction under the APA and the mandamus statute to compel the CIS Defendants to act on plaintiff's N-400 application. Plaintiff alleges that his application has not been processed because it is "awaiting a FBI name check response." Nonetheless, plaintiff argues that the CIS Defendants have a nondiscretionary duty to act on plaintiff's application within a "reasonable time." The CIS Defendants, however, are prohibited from adjudicating any application for naturalization until such time as the FBI completes a full criminal background check. Public Law No. 05-119, Title I, Nov. 26, 1997, 111 Stat. 2448, provides in relevant part,

> ...[D]uring fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated
> or otherwise made available to the Immigration and Naturalization Service shall be used
> to complete adjudication of an application for naturalization unless the Immigration and
> Naturalization Service has received confirmation from the Federal Bureau of
> Investigation that a full criminal background check has been completed....

*See also*, 8 C.F.R.§ 335.2(b)(initial examinations shall be scheduled only after "the [CIS] has

received a definitive response from the Federal Bureau of Investigation that a full criminal background check has been completed").

Thus, while the CIS Defendants may have a duty to act on an application for naturalization within a reasonable time, the time period does not commence until after the CIS Defendants receive a completed background check. Any other conclusion would require the CIS Defendants to take action that is contrary to law. Congress has mandated that CIS expend no funds on an application until after the FBI background check. To require the CIS Defendants to process an application before such time would violate a clear congressional mandate and such a requirement is simply not permitted. *See, e.g.*, *Norton,* 542 U.S. at 64 (the only action that can be compelled under the APA is action legally required). *See also, Omar v. Mueller,* 501 F.Supp.2d 636, 640 (D.N.J. 2007)(where no background check was completed, plaintiff failed to establish that CIS owed him a nondiscretionary duty to process his naturalization application under either mandamus or APA jurisdiction); *Antonishin v. Keisler*, 2007 WL 2788841 (N.D. Ill. Sept. 20, 2007)(no mandamus or APA jursidiction in part because CIS "has no duty to adjudicate a naturalization application before receiving a 'definitive response' from the FBI that the applicant's background check is complete.") *Zaytsev v. Gantner*, 2004 WL 2251665 (S.D.N.Y. Sept. 24, 2004)(writ of mandamus could not issue because CIS is not required to make a determination until after FBI security checks have been completed).

Because plaintiff fails to allege a legally required duty on the part of the CIS Defendants, *i.e.*, the requirement to take action on an application before completion of the FBI background checks, this Court lacks both APA and mandamus jurisdiction over plaintiff's claim.[2]

---

[2] This conclusion is readily distinguishable from the Court's holding in *Shah v. Hansen*, 07 CV 1576 (N.D. Ohio 2007). *Shah* involved

FBI Defendants

The parties do not directly raise the issue of whether the FBI Defendants owe plaintiff a duty to process his background check. Because this Court must review its own subject matter jurisdiction, the Court finds that it must nonetheless address this important issue.

Unlike the CIS Defendants, who are statutorily required to adjudicate N-400 applications[3], there is no corresponding statutory duty on the part of the FBI Defendants. As such, the majority of courts considering the issue have concluded that jurisdiction over the FBI does not lie. *See, e.g., Azadegan v. Chertoff*, 2007 WL 2822783 (E.D.Mich. Sept. 27, 2007)("most courts considering the issue have concluded that they cannot compel the FBI to complete these background checks more quickly"); *Antonishin v. Keisler*, 2007 WL 2788841 (N.D. Ill. Sept. 20, 2007); *Eldeeb v. Chertoff,* 2007 WL 2209231, *21 (M.D.Fla. July 30, 2007)(collecting cases); *Konchitsky v. Chertoff*, 2007 WL 207325 (N.D. Cal. July 13, 2007); *Zaytsey v. Gantner*, 2004 WL 2251665 (S.D.N.Y. Sept. 24, 2004). Only a handful of cases have concluded that the FBI owes a nondiscretionary duty to conduct background checks. The leading case appears to be *Kaplan v. Chertoff*, 481 F.Supp.2d 370 (E.D. Pa. 2007). In *Kaplan*, the court initially concluded that "there appears to be no single statute, that, standing alone, expressly imposes a mandatory duty on the FBI to perform background checks." *Id*. at 400. The

---

an application for adjustment of status rather than a naturalization. Unlike this case, in *Shah* the government pointed to no regulation or spending provision prohibiting defendants from acting upon an application for adjustment of status absent a completed FBI background check.

[3] "[The CIS...."examiner]...shall determine whether to grant or deny the application and shall provide reasons for the determination...." 8 C.F.R. § 316.14(b).

8

court relied, however, on the spending provision set forth above directed at the CIS. Specifically, the court concluded that by prohibiting the CIS from acting on an application until such time as the FBI completes its background check, Congress implicitly mandated that the FBI conduct such checks. In addition, the court relied on two other funding-type provisions. First, the court noted that Congress permits the FBI to "establish and collect fees" to process name checks for non-criminal justice, non-law enforcement employment and licensing practices. Second, the court pointed out that applicants are required to submit fees to the CIS, a portion of which is paid to the FBI. *Id*. at 401. Based on these factors, the court concluded as follows,

> Under these limited circumstances, where Congress has conditioned CIS's mandatory action on the FBI's completion of background checks, and where applicants must pay the FBI, through CIS, to complete the background checks, the Court holds that Congress has, by implication, imposed on the FBI a mandatory duty to complete the background checks.

*Id*.

Upon review, the Court finds that it lacks jurisdiction over the FBI Defendants because they do not owe plaintiff a nondiscretionary duty to process background checks. It is axiomatic that any nondiscretionary duty Congress imposes upon an agency must be a *clear*, nondiscretionary duty. The Court finds that the spending provision of 1997, which is directed solely at the ability of the CIS Defendants to spend money on naturalization applications, falls far short of imposing a clear, nondiscretionary duty on the part of the FBI Defendants to process plaintiff's background check. The Court is also not convinced that the fact that Congress *permits* the FBI Defendants to set and collect fees for furnishing background checks *requires* the FBI Defendants to conduct a background check for plaintiff. Although the Court recognizes that applicants may be at the mercy of the FBI Defendants, there is simply no congressional mandate requiring the FBI Defendants to process plaintiff's background check. Had Congress wished to

9

impose such a duty upon the FBI Defendants, it certainly could have set forth such a duty in a clear fashion.[4]  *See also, Antonishin v. Keisler*, 2007 WL 2788841 (N.D. Ill. Sept. 20, 2007)("[W]e decline to infer [a nondiscretionary duty on the FBI] based on an appropriations measure directed to a different agency."); *Eldeeb v. Chertoff*, 2007 WL 2209231 (M.D. Fla. July 30, 2007)(finding lack of clear duty towards applicant and declining to impose upon the FBI a duty by implication).[5]

Because there is no clear and nondiscretionary duty to process plaintiff's background check, the Court finds that it lacks jurisdiction over the FBI Defendants under the APA.  For the

---

[4] At least one court indicated that, as a matter of logic, Congress must have placed the FBI under some legal duty to complete requested background checks because Congress prevents the CIS from processing applications until the background checks are complete. *Khdir v. Gonzales*, 2007 WL 3308001 (D. Col. Nov. 6, 2007).  This Court disagrees.  It is equally possible that Congress simply chose not to impose a duty on the FBI Defendants and instead opted to give the FBI discretion regarding the processing of non-law enforcement background checks.  Regardless, it is for Congress, not this Court, to impose duties upon governmental agencies.  This Court finds that Congress has not clearly set forth any such duty with respect to the FBI Defendants.

[5] Some courts have concluded that, while the FBI Defendants do not owe a duty to the plaintiff, these defendants owe a duty to the CIS Defendants.  This Court disagrees.  As with an applicant, there is simply no Congressional mandate requiring the FBI to process background checks for the CIS Defendants.  While it appears that the CIS Defendants may remit a portion of the application fee to the FBI Defendants for purposes of the background check, this arrangement does not create a statutory duty.  Moreover, as one court has noted, if the CIS Defendants possessed the authority to compel the FBI Defendants to complete background checks, it is highly likely they would have exercised this authority in order to reduce the tremendous amount of litigation stemming from the delay in background checks.  *See, e.g.*, *Antonishin v. Keisler*, 2007 WL 2788841 (N.D. Ill. Sept. 20, 2007).

same reasons, mandamus jurisdiction is lacking.

### **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.

IT IS SO ORDERED.


      /s/ Patricia A. Gaughan
    PATRICIA A. GAUGHAN
    United States District Judge

Dated: 12/7/07